**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ____________________

JESSICA MILLER, Individually and for Others Similarly Situated,

Plaintiff,

v.

HIGHRIDGE MEDICAL, LLC,

Defendant.

---

# ORIGINAL COLLECTIVE ACTION COMPLAINT

---

## SUMMARY

1. Jessica Miller (Miller) brings this collective action to recover unpaid wages and other damages from Highridge Medical, LLC (Highridge) under the Fair Labor Standards Act (FLSA).

2. Miller also brings wage-and-hour claims against Highridge under California law.

3. Highridge employed Miller as one of its Hourly Employees (defined below).

4. Miller and the other Hourly Employees regularly work more than 40 hours a week.

5. Highridge pays Miller and the other Hourly Employees by the hour, plus various forms of additional remuneration on top of the workers' base hourly rates of pay.

6. But Highridge does not pay them for all overtime wages owed under the FLSA when they work over 40 hours in a workweek.

7. Likewise, Highridge does not pay Miller or the other California Plaintiffs (defined

below) for all overtime wages owed under the California Labor Code ("Labor Code") when she works over 8 hours in a workday and/or 40 hours in a workweek.

8. Instead, Highridge excludes various forms of compensation from Miller's and the Hourly Employees' regular rates of pay, such as non-discretionary bonuses an on-call premium pay, and other similar categories of remuneration (Highridge's "Regular Rate Policy").

9. As a result of Highridge's Regular Rate Policy, it does not pay Miller and the other Hourly Employees all overtime wages owed at the correct rate of pay as required under the FLSA.

10. Similarly, as a result of Highridge's Regular Rate Policy, it does not pay Miller and the other California Plaintiffs all overtime wages owed at the correct rate of pay as required by the Labor Code and applicable IWC Wage Orders.

11. Highridge also requires Miller and other Hourly Employees to perform compensable work that is not captured on their timekeeping records and is not paid by Highridge (Highridge's "Off the Clock Policy").

12. This off-the-clock work includes, but is not limited to, requiring Miller and other Hourly Employees to respond to work emails before their clock in and after they clock out, as well as computer loading times that require Hourly Employees like Miller to boot up their work computer and load various computer programs before they can clock in for work.

13. Such off-the-clock work occurs daily, including during workweeks in which Miller and other Hourly Employees work at least 40 on-the-clock hours, resulting in unpaid overtime wages under the FLSA.

14. Such off-the-clock work also results in unpaid straight time wages for Miller and the California Plaintiffs under the California Labor Code and IWC Wage Orders.

15. Further, Highridge frequently does not authorize, permit, and make available compliant meal and/or rest periods to Miller and the other California Plaintiffs, which they are entitled to under the Labor Code and relevant IWC Wage Orders.

16. Thus, Highridge fails to authorize, permit, and/or make available required meal and/or rest periods to the Miller and the other California Plaintiffs.

17. Further, Highridge fails to provide premium compensation to Miller and the other California Plaintiffs for missed and denied meal and/or rest periods.

18. And Highridge's violative policies and practices result in non-compliant wage statements.

19. Among other omissions and shortcomings, the wage statements Highridge provides to Miller and the other California Plaintiffs fail to accurately reflect their correct overtime rates of pay, gross wages earned, net wages earned, and/or premium pay owed.

20. Because of Highridge's failure to pay all wages (including straight time wages, overtime wages, double time wages, and premium pay) owed, Miller and the other California Plaintiffs do not receive all wages owed during employment.

21. Therefore, Miller and the other California Plaintiffs who are Highridge's former employees do not receive all wages owed following their separation from employment.

1. Highridge's violations of California state wage-and-hour laws serve as predicates for California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.

2. Highridge's illegal employment practices violate California's UCL by practicing, employing, and utilizing the employment practices outlined above by knowingly denying the

Hourly Employees: (1) overtime wages; (2) straight time wages; and (3) compliant meal and rest periods and associated penalty pay. *See* Cal. Bus. & Prof. Code §§ 17200, *et seq*.

## Jurisdiction & Venue

22. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

23. This Court has supplemental jurisdiction over the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

24. This Court has general personal jurisdiction over Highridge because Highridge is a limited liability company that maintains its principal place of business in Westminster, Colorado. *See Smith v. Bloom TV LLC*, No. 1:24-cv-02901-CNS-SBP, 2025 WL 3443078, at *6 (D. Colo. Dec. 1, 2025) (finding general personal jurisdiction over an LLC because its principal place of business was located within the forum).

25. Venue is proper in this Court because Highridge resides in this District and within this Division. 28 U.S.C. § 1391(b)(1).

## Parties

26. Highridge employed Miller as a sales support representative in Costa Mesa, California from approximately July 2022 to January 2026.

27. Highridge classified Miller as non-exempt and paid her by the hour, plus additional forms of remuneration.

28. At the end of her employment, Miller's base hourly rate was $30.294 per hour.

29. But Highridge did not pay her for all overtime hours she worked at the correct rate of pay.

30. Instead, under Highridge's Regular Rate Policy, it improperly excluded various forms of remuneration from Miller's regular rate of pay, including but not limited to non-discretionary bonuses and on-call premium pay.

31. Each of these categories of remuneration paid to Miller is presumed to be included into the regular rate of pay. *See* 29 U.S.C. § 207(e).

32. For example, during the pay period of December 1 to December 14, 2025, Miller worked 96.6 on-the-clock hours during the two-week pay period, of which 31.61 were designated as time-and-a-half overtime hours. Miller worked over 40 hours per week during at least one of these workweeks. During that same period, Highridge paid Miller $175.71 in on-call premium pay and $242.35 in "MI" pay. These additional forms of remuneration were not included into Miller's regular rate of pay, thereby decreasing her true overtime rate of pay in this pay period.

33. By excluding these forms of remuneration from the regular rate, Highridge under-calculated Miller's overtime rate of pay and, as a result, failed to pay all overtime wages owed.

34. During this same pay period, Miller was required to work, on average, 10-to-15 minutes before she could clock in and an additional 10-to-15 minutes after she clocked out performing compensable work. Miller estimates she worked 5 days per week each workweek during this pay period, resulting in unpaid wages of between 1.67 and 2.5 off-the-clock hours during each workweek. During at least one workweek, these off-the-clock hours occurred when Miller worked more than 40 on-the-clock hours, resulting in unpaid overtime wages.

35. Likewise, Highridge frequently did not authorize and permit Miller to take *bona fide*, compliant meal and rest periods.

36. And Miller did not actually receive *bona fide*, compliant meal and rest periods. On average, Miller was required to work through or miss her meal 3-to-4 times per week. Miller was required to work through or miss her rest periods virtually every workday.

37. Highridge failed to provide Miller with timely or compliant meal and rest periods each workday due in large part to chronic understaffing and excessive workloads.

38. Highridge failed to pay Miller with premium pay penalties, at the correct rate of pay based on all remuneration, for each day in which Miller did not receive a timely or compliant meal period and rest period. And when Highridge did provide Miller with such premium payments, Highridge under-calculated Miller's regular rate of pay by failing to include all remuneration.

39. And Highridge did not pay Miller the required premium pay for the first missed or non-compliant meal and rest period each workday. Rather, on most days, Highridge failed to pay Miller the required premium pay at all.

40. When Highridge did pay premium pay for non-compliant meal or rest periods, Highridge consistently under-calculated the regular rate of pay by excluding numerous forms of remuneration, thereby failing to pay all premium wages owed.

41. Miller's written consent is attached hereto as **Exhibit 1**.

42. The other Hourly Employees are likewise subject to Highridge's Regular Rate Policy and are required to perform work while off-the-clock.

43. Miller brings her FLSA claims as a putative collective action pursuant to 29 U.S.C. § 216(b).

44. The putative collective of similarly situated employees is defined as:

> **All current and former hourly Highridge employees in the United States who earned non-discretionary bonuses, on-call premium pay, and/or "MI" pay at any time from 3 years before the filing of this Action through final resolution of this Action (the "Hourly Employees").**

45. All individuals who submit their written consent to join the collective action automatically proceed as party plaintiffs. *See* 29 U.S.C. § 216(b).

46. All opt-in plaintiffs who worked for Highridge within the State of California are free to pursue remedies under the California Labor Code and Business & Professions Code in this action, should they elect to submit their written consent to become a party plaintiffs.

47. As such, all opt-in plaintiffs who worked for Highridge within the State of California during the relevant California limitations periods are referred to throughout this Complaint as "California Plaintiffs."

48. Highridge is a Delaware limited liability company with its principal place of business located in Westminster, Colorado.

49. Highridge may be served with process through its registered agent: **C T Corporation System, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112**.

## FLSA Coverage

50. At all relevant times, Highridge was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

51. At all relevant times, Highridge was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

52. At all relevant times, Highridge was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees

engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, including the myriad categories of items sold in Highridge's stores. 29 U.S.C. § 203(s)(1).

53. At all relevant times, Highridge has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

54. At all relevant times, the Hourly Employees were Highridge's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

55. At all relevant times, the Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

56. Highridge sells medical devices throughout the United States.

57. To meet its business objectives, Highridge employs workers such as Miller and the other Hourly Employees.

58. For example, Miller worked for Highridge as a senior sales support representative from approximately July 2022 until January 2026 in Costa Mesa, California.

59. Miller's primary job duties as a sales support representative included responding to customer inquiries via phone and email, providing customers with information and resolving questions from customers, completing shipments and order entry information to ensure on-time deliveries, assisting the sales team with order-related requests, corrections, and order processing, monitoring inventory levels and communicating backorders, and coordinating with other departments to ensure customers' orders were delivered on time.

60. Miller was Highridge's hourly employee.

61. At the end of her employment, Highridge paid Miller $30.294.

62. Throughout the relevant time period, Highridge also paid Miller various amounts in addition to her base hourly rates of pay, including remuneration categorized as non-discretionary bonuses, on-call premium pay, and "MI" pay.

63. Upon information and belief, the function of the "MI" pay is to compensate Miller and the other Hourly Employees for hours of employment, since the "MI" pay is calculated based on an hourly rate multiplied by a set number of hours.

64. Pursuant to Highridge's Regular Rate Policy, Highridge excluded these various categories of compensation from Miller's and other Hourly Employees' regular rate of pay, including during workweeks in which Miller and the Hourly Employees worked over 40 total on-the-clock hours.

65. Throughout her employment, Highridge required Miller to report her hours to Highridge for approval through its uniform timekeeping system, in accordance with its policies and procedures.

66. Throughout her employment, Miller regularly worked 70 to 95 hours during her bi-weekly pay periods.

67. Miller also regularly worked over 8 hours in a day and/or 40 hours in a week.

68. For example, Miller worked over 96 total on-the-clock hours during the week of December 1 to December 14, 2025. During this time period, Miller worked at least one workweek in which she worked over 40 on-the-clock hours.

69. Miller also earned additional remuneration in the form of on-call premium pay and "MI" pay during the workweeks of December 1 to December 14, 2025.

70. Highridge failed to include the on-call premium pay and the "MI" pay into Miller's regular rate during the workweeks of December 1 to December 14, 2025.

71. Highridge also required Miller to perform work while off-the-clock during the workweeks of December 1 to December 14, 2025, for which Highridge did not compensate Miller.

72. This off-the-clock work included, *inter alia*, requiring Miller to turn on, boot up, and load various computer programs on her work computer before she could clock in for the day.

73. These tasks were necessary and principle for Miller's primary work duties—she could not perform the majority of her job duties unless she turned on her laptop and opened various work programs.

74. Highridge managerial/supervisory employees would also contact Miller before she clocked in for her workday requiring Miller to perform various tasks prior to clocking in. If Miller tried to clock in too early to perform such tasks, Miller would be verbally reprimanded and disciplined. Miller was threatened that if she did not perform such tasks "on her own time" (*i.e.*, while off-the-clock), she would be disciplined.

75. Highridge knew, or with the reasonable exercise of diligence would know, that Miller was performing such work while off-the-clock because it knows worked like Miller cannot clock in until they turn on their work computers and load various computer programs. These programs are automated and Highridge has no difficulty determining the amount of time it takes to turn on, boot up, and load these various programs each workday.

76. Highridge also knows Miller performs these other tasks while off-the-clock because she typically does so at the behest of Highridge's supervisory/managerial employees.

77. Miller was also denied timely or compliant meal and rest periods on most workdays

during this time period as a result of understaffing and excessive workloads. Despite being denied compliant meal and rest periods, Highridge failed to pay Miller the required premium wages owed to her at the correct rate of pay during the pay period covering this workweek.

78. Even if Highridge paid Miller premium wages for non-compliant meal or rest periods, Highridge under-calculated Miller's true regular rate of pay by excluding, among other things, on-call premium pay.

79. As another example, Miller worked over 50 on-the-clock hours during the week of April 19 to April 25, 2025.

80. And, throughout her employment, Highridge failed to provide Miller with wage statements that accurately reflected all her hours worked, her proper overtime rate of pay, and all net and gross wages she actually earned at the required rates.

81. Highridge's provision of itemized wage statements which were non-compliant was willful and knowing, in that Highridge knew or reasonably should have known that all remuneration is presumed to be included into the regular rate (including the various pay codes described herein) but intentionally excluded those forms of remuneration from the regular rate of pay, resulting in underpayment of earned overtime wages and premium wages each pay period.

82. And while exact job duties and precise locations worked may differ, Miller and the other Hourly Employees are subject to Highridge's same or similar unlawful Regular Rate Policy.

83. Highridge runs its payroll for Miller and the other Hourly Employees using common accounting and payroll software.

84. Highridge's common accounting and payroll software utilizes uniform calculations to calculate non-exempt employees' regular rates of pay and overtime rates of pay for its employees

throughout the United States, including in California and elsewhere.

85. As a result of Highridge's common and uniform payroll systems and pay calculation formulas, Highridge subjects Miller and the other Hourly Employees to its Regular Rate Policy wherein Highridge intentionally excludes various forms of remuneration from the regular rate.

86. Despite knowing the other Hourly Employees regularly work more than 40 hours a workweek, Highridge does not pay them for all overtime hours worked at the correct overtime rates of pay.

87. Instead, like Miller, Highridge fails to include various forms of remuneration into the Hourly Employees' regular rates of pay, including forms of remuneration bearing similar pay codes as those paid to Miller.

88. As a result of Highridge's failure to include all such remuneration into the regular rates of the other Hourly Employees, Highridge fails to pay them all overtime wages owed when they work over 40 hours in a week and earn such additional forms of remuneration.

89. Like Miller, Highridge further required the other Hourly Employees to perform work while off-the-clock that is not compensated.

90. Miller and the other Hourly Employees are therefore denied overtime pay, at the correct rate of pay, for all compensable overtime work performed during workdays in which they work over 8 hours and workweeks in which they work over 40 hours.

91. Further, like Miller, Highridge fails to pay proper overtime, based on all remuneration, when the other California Plaintiffs work over 8 hours in a workday.

92. Further, like Miller, Highridge fails to provide the other California Plaintiffs with *bona fide*, compliant meal and rest periods.

93. Instead, like Miller, Highridge requires the California Plaintiffs to work continuously throughout their shifts, and they are not fully relieved of all their duties for 30-minute meal periods, even when they work more than 5 hours a day.

94. And, like Miller, the California Plaintiffs are not fully relieved of all their duties for 10-minute rest periods for every 4 hours they work or major fraction thereof.

95. Instead, Highridge requires Miller and the other California Plaintiffs to work continuously throughout their shifts.

96. Like Miller, Highridge expects and requires the other California Plaintiffs to be available to work during their entire shifts, even during any attempted meal or rest periods.

97. Highridge requires Miller and the other California Plaintiffs to take meal periods after 5 hours as a result of understaffing and excessive workloads, as well as at Highridge's express direction.

98. But, like Miller, Highridge also fails to pay the other California Plaintiffs 1 hour of premium pay for each day it denies them a compliant meal period.

99. And Highridge also fails to pay the California Plaintiffs 1 hour of premium pay for each day it denies them a compliant rest period.

100. Finally, like Miller, Highridge fails to provide the other California Plaintiffs with accurate itemized wage statements, as required by California law.

101. The wage statements Highridge provides are not accurate because they do not reflect the correct overtime rates of pay, the actual gross wages earned, overtime wages earned, premium pay earned, and/or actual gross and net wages earned.

102. Miller and the other California Plaintiffs are owed unpaid wages, including overtime

wages, as well as premium wages, when their employment terminates.

103. These wages remain unpaid under Highridge's policies and practices, and thus, Highridge fails to pay all wages due to the California Plaintiffs upon termination of employment.

104. Thus, these wages remain due and owing to Miller and other California Plaintiffs who are former Highridge Employees.

105. Highridge's violations of California law were willful, carried out in bad faith, and caused significant damage to Miller and the other California Plaintiffs.

## FLSA Collective Action Allegations

106. Miller brings her FLSA claims as collective action on behalf of herself and the other Hourly Employees pursuant to 29 U.S.C. § 216(b).

107. Like Miller, the other Hourly Employees are victimized by Highridge's Regular Rate Policy.

108. Other Hourly Employees worked with Miller and indicated they were paid in the same manner, received similar forms of compensation, performed similar work, and were subject to Highridge's same illegal Regular Rate Policy.

109. Based on her experience with Highridge, Miller is aware Highridge's illegal Regular Rate Policy was imposed on other Hourly Employees.

110. The Hourly Employees are known to Highridge and can be readily identified through Highridge's business and personnel records.

111. The Hourly Employees are similarly situated in the most relevant respects.

112. Even if their precise job titles, exact duties, and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime pay for all

hours worked at the proper premium rates.

113. The *relevant* inquiry is whether the Hourly Employees were required to work under and were paid according to Highridge's Regular Rate Policy and/or Off-the-Clock Policy.

114. Therefore, the specific job titles or precise job locations of the various Hourly Employees do not prevent collective treatment.

115. Rather, the putative collective of Hourly Employees is held together by Highridge's illegal Regular Rate Policy and/or Off-the-Clock Policy, which systematically deprived Miller and the other Hourly Employees of overtime wages at the correct premium rates.

116. Highridge's records show the number of hours the Hourly Employees worked "on the clock" each workday and workweek.

117. Highridge's records likewise show all forms of compensation paid to the Hourly Employees each workweek in which they worked over 40 on-the-clock hours.

118. Highridge's records show whether or not it incorporates all forms of remuneration into the regular rate each workweek in which its employees worked on-the-clock overtime hours.

119. The back wages owed to Miller and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

120. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Highridge's records, and there is no detraction from the common nucleus of liability facts.

121. Therefore, the issue of damages does not preclude collective treatment.

122. And Miller's experiences are therefore typical of the experiences of the other Hourly Employees.

123. Miller has no interest contrary to, or in conflict with, the interests of other Hourly Employees that would prevent collective treatment.

124. Like each Hourly Employee, Miller has an interest in obtaining the unpaid wages owed to them under the FLSA.

125. Miller and her counsel will fairly and adequately represent the Hourly Employees and their interests.

126. Miller retained counsel with significant experience in handling complex class and collective action litigation.

127. Absent this collective action, many Hourly Employees will not obtain redress for their injuries, and Highridge will reap the unjust benefits of violating California law.

128. Further, even if some of the Hourly Employees could afford individual litigation against Highridge, it would be unduly burdensome to the judicial system.

129. Indeed, the multiplicity of actions would create hardship to the Hourly Employees, the Court, and Highridge.

130. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

131. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

132. The common questions of law and fact include:

a. Whether Highridge paid additional remuneration to the Hourly Employees on top of their base hourly rates of pay;

b. Whether Highridge failed to include all remuneration into the

Hourly Employees' regular rates of pay;

c. Whether Highridge's failure to include all remuneration into the regular rate resulted in under-calculation of the overtime rate of pay for Hourly Employees;

d. Whether Highridge required the Hourly Employees to perform compensable work while off-the-clock;

e. Whether Highridge paid the Hourly Employees for their off-the-clock work;

f. Whether Highridge failed to pay the Hourly Employees overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek;

g. Whether Highridge's decision not to pay the Hourly Employees all time-and-a-half overtime wages was made in good faith; and

h. Whether Highridge's violations were willful.

133. As part of its regular business practices, Highridge intentionally, willfully, and repeatedly violated the FLSA.

134. Highridge's illegal policies deprived Miller and the other Hourly Employees of the earned wages, including overtime wages, they are owed under the FLSA.

## Highridge's Violations Were Willful

135. Highridge knew it was subject to the overtime provisions of the FLSA, California Labor Code, and applicable IWC Wage Orders.

136. Highridge knew the California Labor Code and applicable IWC Wage Order(s)

required it to pay non-exempt employees, including Miller and the other Hourly Employees, earned wages for all hours worked.

137. Highridge knew the FLSA, California Labor Code, and applicable IWC Wage Order(s) required it to pay non-exempt employees, including Miller and the other Hourly Employees overtime wages at rates not less than 1.5 times their regular rates of pay, based on all remuneration, for all hours worked after 8 in a workday and 40 in a workweek.

138. Highridge knew Miller and the other Hourly Employees worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed because it required them to report their "on-the-clock" hours worked.

139. Highridge knew each California Plaintiff worked more than 8 hours in a workday or 40 hours in at least one workweek during the 4 years before this Complaint was filed because it required them to report their "on the clock" hours worked.

140. Highridge knew Miller and the other Hourly Employees are non-exempt employees entitled to overtime wages under the FLSA and Labor Code.

141. Highridge knew it paid the Hourly Employees on an hourly basis.

142. Highridge knew it paid the Hourly Employees additional remuneration beyond their base hourly rates of pay.

143. Highridge knew that all remuneration is presumed to be included into the regular rate under the FLSA and California Labor Code.

144. Highridge knew it improperly excluded various forms of compensation from the Hourly Employees' regular rates of pay, and did so during workweeks in which the Hourly Employees worked over 8 hours in a day and/or 40 hours in a workweek.

145. Highridge's failure to pay Miller and the other Hourly Employees overtime wages as a result of its failure to include all remuneration into the regular rate was neither reasonable nor was its decision to exclude remuneration from the regular rate made in good faith.

146. Thus, Highridge knew, should have known, or recklessly disregarded whether it failed to pay Miller and the other Hourly Employees all overtime wages owed.

147. Highridge likewise knew it required Miller and the other Hourly Employees to perform additional work that was not captured on their official timekeeping records, including computer boot-up time and other work tasks.

148. Highridge's failure to pay Miller and the other Hourly Employees for all overtime hours worked, including those worked while off-the-clock, was neither reasonable nor was its decision to decline payment for these hours worked made in good faith.

149. Highridge knew the Labor Code and applicable IWC Wage Orders required it to provide employees, including Miller and the other California Plaintiffs, with a 30-minute, duty free meal period for every five hours worked and a 10-minute, duty free rest period for every four hours worked or major fraction thereof.

150. Highridge knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Miller and the other California Plaintiffs, one hour of premium pay for each day they are denied a compliant meal period.

151. And Highridge knew the California Labor Code and applicable IWC Wage Orders required it to pay employees, including Miller and the other California Plaintiffs, one hour of premium pay for each day they are denied a compliant rest period.

152. Highridge knew Miller and the other California Plaintiffs did not receive compliant

meal or rest periods each workday.

153. Nonetheless, Highridge did not pay Miller and the other California Plaintiffs one hour of premium pay each day it denied them a compliant meal period.

154. And Highridge did not pay Miller and the other California Plaintiffs one hour of premium pay each day it denied them a compliant rest period.

155. Highridge's failure to provide Miller and the other California Plaintiffs with compliant meal periods was neither reasonable nor was its decision not to pay these employees one hour of premium pay each day it denied them a compliant meal period made in good faith.

156. Thus, Highridge knew, should have known, or recklessly disregarded whether it failed to pay Miller and the other California Plaintiffs for all the hours they performed compensable work.

157. Highridge knew the California Labor Code and applicable IWC Wage Orders required it to provide Miller and the other California Plaintiffs with accurate itemized wage statements.

158. Nonetheless, Highridge knew the wage statements it provided to Miller and the other California Plaintiffs did not accurately reflect their actual overtime rates of pay, their actual overtime wages earned, their actual gross and net wages earned, and/or their premium pay for missed meal and rest periods.

159. Indeed, Highridge made the intentional decision to include these various forms of remuneration as pay codes on its itemized wage statements, but nonetheless intentionally decided to exclude them from the regular rate of pay each pay period. As a result, Highridge intentionally, willfully, and knowingly provided itemized wage statements which under-reported the actual and

appropriate overtime rates of pay and premium wages owed to Miller and the California Plaintiffs each pay period.

160. Highridge likewise made the intentional decision not to pay Miller and the other California Plaintiffs all premium wages owed for each workday in which they were denied timely or compliant meal and rest periods. As a result Highridge issued itemized wage statements which intentionally omitted the premium wages owed to Miller and the other California Plaintiffs each pay period.

161. Highridge's failure to provide Miller and the other California Plaintiffs with accurate wage statements was neither reasonable nor was its decision not to provide these employees with accurate wage statements made in good faith.

162. Highridge knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA, Labor Code, and applicable IWC Wage Order(s).

163. Highridge knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Miller and the other Hourly Employees of their earned overtime wages in violation of the FLSA.

164. Highridge knowingly, willfully, and/or in reckless disregard carried out its illegal policies that systematically deprived Miller and the other California Plaintiffs of their earned wages, overtime wages, rest and meal periods, premium pay for missed rest and meal periods, and accurate wage statements in violation of the Labor Code and applicable IWC Wage Order(s).

165. In sum, Highridge's violations were willful, carried out in bad faith, and caused significant damage to Miller and the other Hourly Employees.

## Count I

**Failure to Pay Overtime Wages Under the FLSA Pursuant to 29 U.S.C § 216**

166. Miller brings her FLSA claims on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

167. Highridge violated, and is violating, the FLSA by employing non-exempt employees (Miller and the other Hourly Employees) in a covered enterprise for workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 each workweek, including hours worked "off the clock."

168. Highridge's unlawful conduct harmed Miller and the other Hourly Employees by depriving them of the overtime compensation they are owed.

169. Accordingly, Highridge owes Miller and the other Hourly Employees the difference between the overtime wages actually paid and the proper overtime wages actually earned.

170. Because Highridge's FLSA violations were willful, Highridge owes these wages for at least the past 3 years.

171. Because Highridge's FLSA violations were not committed in good faith, Highridge is also liable to Miller and the other Hourly Employees for an additional amount equal to all unpaid wages as liquidated damages.

172. Finally, Miller and the other Hourly Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

**Failure to Pay for All Hours Worked Pursuant to Cal. Lab. Code § 1194**

173. Miller brings her earned wages claim under the California Labor Code and IWC Wage Order(s) in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

174. At all relevant times, Highridge was subject to the California Labor Code and applicable Wage Order(s) because Highridge was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

175. At all relevant times, Highridge employed Miller and the other California Plaintiffs as its covered "employees" within the meaning prescribed in the California Labor Code.

176. California Labor Code § 204 provides in relevant part that "all wages … earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular payday."

177. California Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

178. California Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

179. California Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the Wage Orders.

180. Highridge willfully engaged in and continues to engage in a policy and practice of not compensating Miller and the other California Plaintiffs for all hours worked or spent in Highridge's control.

181. Highridge requires Miller and the other California Plaintiffs to perform compensable work "off the clock," including during necessary and indispensable preliminary work activities spent turning on their laptop computers and loading required computer programs.

182. In other words, Miller and the other California Plaintiffs are forced to perform work for Highridge's benefit without compensation during their "off the clock" preliminary work time.

183. Highridge knowingly and willfully refuses to perform its obligations to provide Miller and the other California Plaintiffs with compensation for all time worked.

184. Highridge's unlawful conduct harmed Miller and the other California Plaintiffs by depriving them of their wages for all hours worked, which they are owed under California law.

185. Despite having knowledge or the ready ability to gather knowledge of the precise number of hours worked using basic diligence, Highridge regularly fails to compensate Miller and the other California Plaintiffs for all hours worked.

186. As such, Highridge committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Miller's and the other California Plaintiffs' rights.

187. Accordingly, Miller and the other California Plaintiffs are thus entitled to recover nominal, actual, liquidated, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

## COUNT III

**Failure to Pay Overtime Wages Pursuant to Cal. Lab. Code § 510**

188. Miller brings her overtime claims under the California Labor Code and IWC Wage Order(s) as in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

189. At all relevant times, Highridge was subject to the Labor Code and applicable Wage Order(s) because Highridge was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

190. At all relevant times, Highridge employed Miller and the California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

191. Miller and the California Plaintiffs are entitled to overtime pay, based on all remuneration, under the Labor Code and applicable Wage Orders.

192. Labor Code § 510(a) provides:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

193. IWC Wage Order 17-2001(4) states that employees:

> … shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek….

194. Labor Code § 1194(a) provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

195. Labor Code § 1198 makes it unlawful for employers, like Highridge, to employ employees, including Miller and the California Plaintiffs, under conditions that violate the IWC Wage Order(s).

196. Despite regularly working over 8 hours a workday and 40 hours a workweek as part of their normal and regular schedules, Highridge did not pay Miller and the California Plaintiffs overtime wages of 1.5 times their regular rates of pay—based on all remuneration—for all overtime hours worked, including those worked "off the clock."

197. Highridge's unlawful conduct harmed Miller and the California Plaintiffs by depriving them of the overtime wages they are owed under California law.

198. Accordingly, Highridge owes Miller and the California Plaintiffs the unpaid balance of the full amount of overtime wages owed and interest at the highest applicable rates.

199. Finally, Highridge is also liable to Miller and the California Plaintiffs for their reasonable attorneys' fees and costs incurred in this action.

## Count IV

**Failure to Authorize, Permit, and/or Make Available Meal and Rest Periods Pursuant to Cal. Lab. Code §§ 226.7 and 512**

200. Miller brings her meal and rest period claims under the California Labor Code and IWC Wage Order(s) in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

201. At all relevant times, Highridge was subject to the Labor Code and applicable Wage Orders.

202. At all relevant times, Highridge was Miller's and the California Plaintiffs' "employer" within the meaning prescribed in the Labor Code.

203. At all relevant times, Miller and each California Plaintiff was Highridge's "employee" within the meaning prescribed in the Labor Code.

204. At all relevant times, Miller and the California Plaintiffs were entitled to compliant, *bona fide* meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

205. Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Highridge, to authorize and permit meal and rest periods to their employees, including Miller and the California Plaintiffs.

206. Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s) require employers, like Highridge, to provide employees, including Miller and

the California Plaintiffs, one uninterrupted 30-minute meal period when they work more than 5 hours per day and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

207. Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders require employers, like Highridge, to authorize and permit employees, including Miller and the California Plaintiffs, to take 10 minutes of rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

208. Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

209. Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like Highridge, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

210. At all relevant times, Highridge routinely failed to make meal periods available to Miller and the California Plaintiffs.

211. Despite long days regularly lasting in excess of 8, and occasionally 12 hours, Miller and the California Plaintiffs are regularly unable to take a meal period, prevented from timely taking a meal period, are otherwise subject to interruption during their meal periods, and are frequently interrupted during their attempted meal periods.

212. Miller and the California Plaintiffs are not paid one hour of premium pay for all of their missed meal periods as required by California law. When Highridge does pay premium wages

to Miller and the California Plaintiffs for non-compliant meal periods, Highridge intentionally under-calculates the correct regular rate of pay by failing to include numerous categories of remuneration paid to these employees.

213. Similar to meal periods, at all relevant times, Highridge regularly fails to make rest periods available to Miller and the California Plaintiffs.

214. When available, if ever, Miller's and the California Plaintiffs' rest periods were often not compliant, but rather, were generally untimely and/or short.

215. Miller and the California Plaintiffs do not receive premium pay for their missed rest periods as required by California law. When Highridge does pay premium wages to Miller and the California Plaintiffs for non-compliant rest periods, Highridge intentionally under-calculates the correct regular rate of pay by failing to include numerous categories of remuneration paid to these employees.

216. Highridge's unlawful conduct harmed Miller and the California Plaintiffs by depriving them of compliant meal and rest periods, as well as premium pay.

217. Highridge knowingly, willfully, or in reckless disregard carried out this pattern or practice of failing to provide Miller and the California Plaintiffs compliant meal and rest periods and required premium pay, at the correct regular rate of pay, for missed meal and rest periods.

218. Accordingly, Miller and the California Plaintiffs are entitled to compensation for Highridge's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

## COUNT V

**Failure to Provide Accurate Itemized Wage Statements Pursuant to Cal. Lab. Code § 226**

219. Miller brings her wage statement claim under the California Labor Code and IWC Wage Order(s) in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

220. At all relevant times, Highridge was subject to the Labor Code and applicable Wage Order(s) because Highridge was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

221. At all relevant times, Highridge employed Miller and the California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

222. Labor Code § 226(a) provides:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to her or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of her or her social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee .... The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the

> statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

223. The applicable Wage Order(s) establish similar wage statement requirements.

224. Labor Code § 226(e) provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorneys' fees.

225. As a result of its aforementioned illegal practices, Highridge does not provide timely, accurate itemized wage statements to Miller and the California Plaintiffs, in violation of Labor Code § 226(a) and the applicable Wage Order(s).

226. Specifically, the wage statements Highridge provides Miller and the California Plaintiffs do not accurately reflect their actual overtime rates of pay, their actual gross wages earned, their actual overtime wages earned, their premium pay earned, or their actual gross or net wages earned.

227. The wage statements Highridge provides Miller and the California Plaintiffs also fails to accurately describe all deductions made each pay period. Instead, Highridge issues wage statements which omit the deduction amount for the "W+ MBR NET" deduction each pay period, listing the deduction as "$0" and instead only informs the employees of the aggregated "Year to Date" total of such deduction, which increases each pay period. This demonstrates Highridge applies the W+ MBR NET deduction, but intentionally omits the amount being deducted from

wages during the specific pay period.

228. Highridge willfully and intentionally provided these non-compliant wage statements to Miller and the California Plaintiffs despite the ready ability to provide accurate wage statements.

229. Highridge's unlawful conduct harmed Miller and the California Plaintiffs by depriving them of the accurate wage statements they are entitled to under California law.

230. Miller and the California Plaintiffs were injured due to Highridge's wage statement violations.

231. Upon information and belief, because Highridge failed to provide accurate and compliant wage statements, Miller and the California Plaintiffs suffered informational harm and were prevented from knowing whether, and to what extent, they had been underpaid by Highridge.

232. As a result of Highridge's wage statement violations, Miller and the California Plaintiffs were deprived of the ability to ensure Highridge was making proper payroll tax deductions on their behalf each pay period.

233. Highridge's wage statement violations caused Miller and the California Plaintiffs to endure uncertainty regarding their wages and prevented them from taking action to correct Highridge's wage-and-hour violations at an earlier time, resulting in numerous workweeks for which some of the California Plaintiffs are now time-barred from being able to recover in a private cause of action.

234. Accordingly, Highridge is liable to Miller and the California Plaintiffs for the amounts described above, plus interest.

235. Finally, Highridge is also liable to Miller and the California Plaintiffs for their

reasonable attorneys' fees and costs incurred in this action pursuant to Labor Code § 226(e).

## Count VI

**Waiting Time Penalties Pursuant to Cal. Lab. Code §§ 201–203**

236. Miller brings her waiting time penalties claim under the California Labor Code and IWC Wage Order(s) in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

237. At all relevant times, Highridge was subject to the Labor Code and applicable Wage Order(s) because Highridge was (and is) an "employer" within the meaning of the Labor Code and applicable Wage Order(s).

238. At all relevant times, Highridge employed Miller and the California Plaintiffs as its covered "employees" within the meaning prescribed in the Labor Code.

239. Labor Code § 201 provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

240. Labor Code § 202 provides: "If an employee not having a written contract for a definite period quits her or her employment, her or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of her or her intention to quit, in which case the employee is entitled to her or her wages at the time of quitting."

241. Labor Code § 203 provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

242. Miller and some of the other California Plaintiffs have left their employment with Highridge, at which time Highridge owed them unpaid wages.

243. These earned, but unpaid, wages derive from the unpaid earned wages, overtime pay, and premium pay Highridge owes Miller and the California Plaintiffs.

244. Highridge willfully refused and continues to refuse to pay Miller and the California Plaintiffs all wages due and owing to them, in the form of earned wages, overtime pay, and premium pay, upon the end of their employment as a result of Highridge's illegal policies.

245. Highridge's unlawful conduct harmed Miller and the California Plaintiffs by depriving them of the earnings and interest they are owed under California law.

246. Accordingly, Highridge is liable to Miller and the California Plaintiffs for all penalties owing pursuant to Labor Code §§ 201–203.

247. Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

248. Therefore, Miller and other California Plaintiffs are entitled to penalties pursuant to Labor Code § 203, plus interest.

## COUNT VII

### UCL Violations Pursuant to Cal. Bus. & Prof. Code §§ 17200 *et seq.*

249. Miller brings her UCL claim under the California Business & Professions Code in her individual capacity, as does any other California Plaintiff who submits their written consent to join this action pursuant to 29 U.S.C. § 216(b).

250. California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

251. California Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

252. California Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

253. Beginning at an exact date unknown to Miller, but at least during the 4 years prior to the filing of this Complaint, Highridge committed acts of unfair competition as defined by the UCL, by engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

a. Violations of California Labor Code § 510 and IWC Wage Orders pertaining to overtime wages;

b. Violations of California Labor Code § 1194 and IWC Wage Orders pertaining to payment for all hours worked; and

c. Violations of California Labor Code §§ 226.7 and IWC Wage Orders pertaining to rest periods and premium pay.

254. Highridge's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of California Business and Professions Code §§ 17200, *et seq*.

255. The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of California Business and Professions Code §§ 17200, *et seq*.

256. Among other things, the acts and practices have taken from Miller and the California Plaintiffs wages rightfully earned from them, while enabling Highridge to gain an unfair competitive advantage over law-abiding employers and competitors.

257. California Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

258. As a direct and proximate result of the aforementioned acts and practices, Miller and the California Plaintiffs have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

259. California Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

260. Miller and the California Plaintiffs are entitled to restitution pursuant to California Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this Complaint.

261. Miller's success in this action will enforce important rights affecting the public interest and, in that regard, Miller sues on behalf of herself, as does each California Plaintiff.

262. Miller and the California Plaintiffs seek and are entitled to unpaid wages, compensatory damages, and all other equitable remedies owing to them.

263. Miller takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Miller by forcing her to pay attorneys' fees from the recovery in this action.

264. Attorney's fees are appropriately awarded to Miller pursuant to California Code of Civil Procedure § 1021.5 and otherwise.

## JURY DEMAND

265. Miller hereby demands a jury trial on all claims and issues, as she and the other Hourly Employees and/or California Plaintiffs are entitled to a jury.

## RELIEF SOUGHT

WHEREFORE, Miller, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order appointing Miller and her counsel to represent the interests of the Hourly Employees;

c. Damages and restitution according to proof at trial for all unpaid wages and other injuries, as provided by the FLSA, Labor Code, and other law;

d. A Declaratory Judgment that Highridge violated the FLSA, Labor Code, California law, and public policy as alleged herein;

e. An Order finding Highridge liable to Miller and the other Hourly Employees for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

f. An Order finding Highridge liable to Miller and the other California Plaintiffs for their unpaid overtime wages, unpaid premium wages, statutory damages, and any other penalties owed under the Labor Code and applicable IWC Wage Order(s);

g. An equitable accounting to identify, locate, and restore all current and former employees the wages and compensatory damages they are due, with interest thereon at the highest rates allowable by law;

h. Judgment awarding Miller and the other Hourly Employees all unpaid overtime wages, liquidated damages, and any other penalties available under the FLSA;

i. Judgment awarding Miller and the other California Plaintiffs all unpaid wages, overtime wages, premium wages, statutory damages, and any other penalties available under the California Labor Code and applicable IWC Wage Order(s);

j. An Order awarding attorney's fees, costs, and expenses as provided by the FLSA, Labor Code, Code of Civil Procedure § 1021.5, the laws of the State of California, and/or other applicable law;

k. Pre- and post-judgment interest at the highest applicable rates; and

l. Such other and further relief as may be necessary and appropriate.

Date: May 11, 2026

Respectfully submitted,

*/s/ William M. Hogg*
**William M. Hogg**
Texas Bar No. 24087733
California Bar No. 338196
**Laurel Employment Law**
808 Wilshire Boulevard, Suite 200
Santa Monica, California 90401
Tel: (323) 551-9221
Fax: (310) 564-4093
william@laurelemploymentlaw.com

*Counsel for Miller & the Hourly Employees*